**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| ASK SYDNEY, LLC,<br><br>               Plaintiff,<br><br>   v.<br><br>GOOGLE, LLC,<br><br>               Defendant. | Civil Action No. 6:23-cv-00111 |

**<u>DEFENDANT GOOGLE, LLC'S NOTICE OF MOTION AND MOTION TO DISMISS</u>**

# TABLE OF CONTENTS

**Page**

I.     SUMMARY OF THE ARGUMENT ............................................................1

II.    STATEMENT OF FACTS .......................................................................2

     A.    The asserted patents. ...................................................................2

     B.    The asserted claims and allegations against Google. .................................3

III.   ARGUMENT ...................................................................................4

     A.    Ask Sydney has not plausibly alleged that Google infringes its patents. ...............4

          1.    Legal standards. ...................................................................4

          2.    The Complaint fails to provide notice of the Google products or services accused of infringing the asserted patents.................................5

          3.    The Complaint also fails because it does not adequately allege Google practices each element of the asserted claims. ..............................7

               a.    The Complaint admits Google does not present images to users "one at a time," as required by the asserted claims in both the '786 and '705 patents.........................................7

               b.    Ask Sydney does not plausibly allege that the accused instrumentalities practice the "determining weightings" and "determining" an "additional tag" based on a different tag "having a highest weighting" limitations of the '786 Patent. ..........9

               c.    Ask Sydney distinguished Google Search during prosecution of the '705 Patent, thereby admitting Google Search does not practice the claims. ..............................10

     B.    The asserted claims are invalid under 35 U.S.C. § 101. ......................................11

          1.    Abstract ideas cannot be patented....................................................11

          2.    *Alice* step one: the asserted claims are directed to an abstract idea. ..........12

          3.    *Alice* step two: representative claim 1 lacks an inventive concept. ..........16

     C.    Leave to amend should be denied. .......................................................19

IV.   CONCLUSION..................................................................................20

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.,*
 882 F.3d 1121 (Fed. Cir. 2018) ......................................................................... 11, 12

*Addiction & Detoxification Inst. L.L.C. v. Carpenter,*
 620 F. App'x 934 (Fed. Cir. 2015) ........................................................................ 5

*Affinity Labs of Tex., LLC v. Amazon.com Inc.,*
 838 F.3d 1266 (Fed. Cir. 2016) ............................................................. 12, 13, 14, 17

*AK Meeting IP LLC v. Zoho Corp.,*
 No. 1:22-CV-1165-LY, 2023 WL 1787303, at *4 (W.D. Tex. Feb. 6, 2023), report and
 recommendation adopted sub nom., No. 1:22-CV-01165-LY, 2023 WL 3035436
 (W.D. Tex. Mar. 1, 2023) ...................................................................................... 6

*ALD Soc., LLC v. Google, LLC,*
 No. 6:22-CV-00972-FB, Dkt. 20 (W.D. Tex. Mar. 17, 2023)................................... 20

*Alice Corp. v. CLS Bank Int'l,*
 573 U.S. 208 (2014)........................................................................... 11, 15, 16, 19

*Amgen Inc. v. Coherus BioSciences Inc.,*
 931 F.3d 1154 (Fed. Cir. 2019) ........................................................................... 11

*Artrip v. Ball Corp.,*
 735 F. App'x 708 (Fed. Cir. 2018) ........................................................................ 5

*Ballard v. Devon Energy Prod. Co.,*
 678 F.3d 360 (5th Cir. 2012) ............................................................................... 19

*Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.),*
 687 F.3d 1266 (Fed. Cir. 2012) ........................................................................ 17, 18

*Bilski v. Kappos,*
 561 U.S. 593 (2010)............................................................................................ 11

*Bot M8 LLC v. Sony Corp. of Am.,*
 4 F.4th 1342 (Fed. Cir. 2021) ................................................................... 4, 5, 7, 8, 9

*Bridge & Post, Inc. v. Verizon Commc'ns, Inc.,*
 778 F. App'x 882 (Fed. Cir. 2019) ........................................................................ 14

*BSG Tech LLC v. BuySeasons, Inc.*,
   899 F.3d 1281 (Fed. Cir. 2018) ........................................................................... 13

*Cleveland Clinic Found. v. True Health Diagnostics LLC*,
   859 F.3d 1352 (Fed. Cir. 2017) ........................................................................... 12

*CPC Pat. Techs. Pty Ltd. v. Apple Inc.*,
   No. 6:21-CV-00165-ADA, 2022 WL 118955 (W.D. Tex. Jan. 12, 2022) ................ 4

*Customedia Techs., LLC v. Dish Network Corp.*,
   951 F.3d 1359 (Fed. Cir. 2020) ........................................................................... 12

*Disc Disease Sols. Inc. v. VGH Sols., Inc.*,
   888 F.3d 1256 (Fed. Cir. 2018) ............................................................................. 5

*Elec. Power Grp., LLC v. Alstom S.A.*,
   830 F.3d 1350 (Fed. Cir. 2016) ............................................................... 12, 13, 17

*Encoditech, LLC v. Citizen Watch Co. of Am., Inc.*,
   No. SA-18-CV-1335-XR, 2019 WL 2601347 (W.D. Tex. June 25, 2019) ............... 4

*Enfish, LLC v. Microsoft Corp.*,
   822 F.3d 1327 (Fed. Cir. 2016) ........................................................................... 12

*EscapeX IP LLC v. Block, Inc.*,
   No. 1:22-CV-03575 (JMF), Dkt. No. 30 (S.D.N.Y. Jan. 24, 2023) ........................ 14

*Estech Sys., Inc. v. Regions Fin. Corp.*,
   No. 6:20-CV-00322-ADA, 2020 WL 6324321 (W.D. Tex. Oct. 28, 2020) .............. 5

*Free Stream Media Corp. v. Alphonso Inc.*,
   996 F.3d 1355 (Fed. Cir. 2021) ........................................................................... 13

*Grecia Est. Holdings LLC v. Meta Platforms, Inc.*,
   605 F. Supp. 3d 905 (W.D. Tex. 2022) ................................................................ 20

*HourExchange, LLC v. Student Loan Benefits, Inc.*,
   No. 1:22-CV-00356-RP, 2023 WL 139150 (W.D. Tex. Jan. 9, 2023) ......... 4, 5, 8, 9, 10

*In re TLI Commc'ns LLC Pat. Litig.*,
   823 F.3d 607 (Fed. Cir. 2016) ....................................................................... 12, 17

*Intellectual Ventures I LLC v. Cap. One Bank (USA)*,
   792 F.3d 1363 (Fed. Cir. 2015) ........................................................................... 19

*Internet Pats. Corp. v. Active Network, Inc.*,
   790 F.3d 1343 (Fed. Cir. 2015) ........................................................................... 14

*Lovelace v. Software Spectrum Inc.*,
    78 F.3d 1015 (5th Cir. 1996) ............................................................................ 2

*LS Cloud Storage Techs., LLC v. Amazon.com, Inc.*,
    No. 1:22-CV-1167-RP, 2023 WL 2290291 (W.D. Tex. Feb. 27, 2023) ................... 5

*Lyda v. CBS Corp.*,
    838 F.3d 1331 (Fed. Cir. 2016) ........................................................................ 8

*Metricolor LLC v. L'Oreal S.A.*,
    791 F. App'x 183 (Fed. Cir. 2019) ................................................................. 7, 9

*Network Architecture Innovations LLC v. CC Network Inc.*,
    No. 2:16-CV-00914-JRG, 2017 WL 1398276 (E.D. Tex. Apr. 18, 2017) .............. 20

*Sanderling Mgmt. Ltd. v. Snap Inc.*,
    No. 2021-2173, 2023 WL 2904758 (Fed. Cir. Apr. 12, 2023) ............................ 12

*SAP Am., Inc. v. InvestPic, LLC*,
    898 F.3d 1161 (Fed. Cir. 2018) ...................................................................... 13

*Simio, LLC v. FlexSim Software Prods., Inc.*,
    983 F.3d 1353 (Fed. Cir. 2020) ...................................................................... 12

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
    874 F.3d 1329 (Fed. Cir. 2017) ................................................................. 17, 19

*Vervain, LLC v. Micron Tech., Inc.*,
    No. 6:21-CV-00487-ADA, 2022 WL 23469 (W.D. Tex. Jan. 3, 2022) .............. 2, 12

**Statutes**

35 U.S.C. § 101 ............................................................................................... 1, 11, 20

## I.     SUMMARY OF THE ARGUMENT

Defendant Google, LLC respectfully requests that Plaintiff Ask Sydney, LLC's Complaint be dismissed for two reasons. First, the Complaint fails to state a plausible claim for patent infringement. Second, the patents are invalid under 35 U.S.C. § 101.

The Complaint's conclusory and confusing allegations do not put Google on notice of how it allegedly infringes Ask Sydney's patents. At an absolute minimum, Ask Sydney must identify how a specific product or service practices the asserted claims. Ask Sydney does not even attempt to do this. Instead, the Complaint refers ambiguously to "Google services" or conduct by "Google" generally without specifying any accused product or service. At other points, Ask Sydney cherry-picks functionalities of *separate* Google products and cobbles them together in one claim chart. Not only does Ask Sydney fail to identify what Google products or services it accuses of infringement, but it also fails to adequately allege Google practices each element of the asserted claims. In fact, Ask Sydney's own allegations directly undermine its infringement theory (to the extent one is cognizable): Ask Sydney admits that Google does not present images "*one at a time,*" as is required by the asserted claims. Further, as to two limitations, Ask Sydney alleges absolutely no facts to support its conclusion that Google practices these limitations.

Second, the asserted claims are invalid under 35 U.S.C. § 101 because they do nothing but apply conventional computer technology to the abstract idea of generating and presenting an image to a user in order to determine the user's interest. Abstract ideas are not patentable, and therefore the asserted claims are invalid.  The claims do not disclose any technical details as to how to achieve this result, but rather just claim using a computer to do what humans have been doing for eons, whether with drawings, paintings, photographs or digital images: showing a person a picture and, based on what they like, showing them others, then making recommendations based on their responses. This is no different than what an interior designer might do, showing a client pictures of different room styles, then recommending furniture, paint, decor and the like based on the client's responses. Moreover, the claims do not add an inventive

concept to the abstract idea: they do nothing but recite the abstract idea itself.

## II.   STATEMENT OF FACTS

### A.   The asserted patents.

The Complaint alleges that Google directly infringes two patents: U.S. Patent Nos. 9,323,786 ("the '786 Patent") and 10,474,705 ("the '705 Patent"). Compl. ¶¶ 12, 18, 25. The '786 Patent is entitled "System and computer method for visually guiding a user to a current interest." The '705 Patent is entitled "Iterative image search algorithm informed by continuous human-machine input feedback." The '705 Patent is a continuation of the '786 Patent, and thus, the asserted patents share the same specification.[1] Compl., Ex. B, Dkt. No. 1-1, at 43, '705 Patent 1:6-16. The asserted patents are substantially similar, to such a degree that during the prosecution of the '705 Patent, the United States Patent and Trademark Office ("USPTO") initially rejected the '705 Patent application based on double patenting in light of the '786 Patent.[2] Declaration of Elizabeth Dinh ("Dinh Decl."), Ex. 4, '705 Patent Prosecution History, Non-Final Rejection, at 2-4 (Jan. 11, 2019).

The patents purport to "guide a user to his or her current interest based on a sequential presentation of images representative of possible physical objects of interest." Compl., Ex. A, Dkt. No. 1-1, at 14, '786 Patent 1:54-58. The patents admit that "[t]here exist a multitude of applications, both Internet-based applications and smartphone/tablet-based applications, that make recommendations for users based on analyzing a user's history." *Id.* 1:22-25. The patents also acknowledge that "[o]nly the human can, using his or her subjective senses, ascertain from an image how a user feels about what is presented in the image." *Id.* 5:29-31. But, the patents contend that a "new programmed machine" is needed to "help a user determine what the user's

---

[1] Google's citations to the common specification are hereinafter to the '786 Patent.

[2] In deciding a Rule 12(b)(6) motion, courts consider the complaint, documents attached or incorporated by reference thereto, and documents subject to judicial notice, like the prosecution history of a patent. *Vervain, LLC v. Micron Tech., Inc.*, No. 6:21-CV-00487-ADA, 2022 WL 23469, at *5 n.2 (W.D. Tex. Jan. 3, 2022) (citing *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996)).

current interest is" and to do so "quickly, within less than a minute or so." *Id.* 1:45-48, 5:31-41. The patents do not describe what this "new programmed machine" is, beyond identifying readily-available technology. In particular, the specification describes reliance on "conventional[]" computers, operated "in a well-known manner," using "well understood" generic computer components, such as "server[s]," "database[s]," and "memory." *Id.* 4:55-5:2, 6:37-40, 7:34-46.

   **B.     The asserted claims and allegations against Google.**

   The only claims Plaintiff addresses explicitly in the Complaint or claim charts are claim 1 of the '786 Patent and claim 1 of the '705 Patent (collectively, the "asserted claims").[3] In the Complaint, Plaintiff summarily alleges that Google directly infringes claim 1 of each of the asserted patents by "making, using, testing, selling, offering for sale and/or importing into the United States Defendant's Accused Products." Compl. ¶¶ 18, 25.  Plaintiff alleges "'Accused Products' refers to, by way of example and without limitation, Google's YouTube … and Google's advertising service Google Ads." *Id*. ¶ 16. Yet the claim charts attached to the Complaint further reference "Google search engine, Google services, the Display Network, and any other websites that use Google Ads." *See, e.g., Id*., Ex. C, Dkt. No. 1-1, at 59.

   Plaintiff does not direct its claim charts to any single Google product. Rather, Plaintiff picks and chooses different Google products it contends meet different limitations. For example, in the '705 claim chart, Plaintiff includes a purported screenshot of "Google Search Engine: Image Search" when addressing the "transitioning the one of the digital images" limitation. *Id., Ex. D,* at 95-96. But when addressing the next limitation regarding "receiving via the user input," Plaintiff includes only a purported screenshot of YouTube. *Id.* at 97-98. In so doing, Plaintiff attempts to make out a claim by cobbling together functionalities from multiple different products. Plaintiff never alleges that any one product meets each and every limitation of at least

---

[3] While Ask Sydney alleges that Google directly infringes "without limitation at least claim 1 of the '786 Patent" and claim 1 of the '705 Patent, it does not name any other claims nor plead any facts as to any other claims. Compl. ¶¶ 18, 25.

one claim, as would be required to plead infringement.   To conserve the Court's and the parties' resources, including by avoiding unnecessary motion practice, Google alerted Plaintiff's counsel of these serious defects on April 10, 2023 and referred to that letter when giving notice of this Motion to Plaintiffs' counsel on May 2, 2023.  Google received no substantive response.[4]

## III.    ARGUMENT

### A.    Ask Sydney has not plausibly alleged that Google infringes its patents.

Ask Sydney's Complaint fails to state a plausible claim for direct infringement, which is the only form of infringement pled. First, the Complaint fails to adequately identify the products it accuses of infringement, because it impermissibly mixes and matches accused instrumentalities. Second, even if it were somehow permissible to mix and match accused instrumentalities, Ask Sydney still fails to plausibly allege each element of the asserted claims is practiced.

#### 1.    Legal standards.

Stating a claim for patent infringement under *Twombly* and Rule 8 of the Federal Rules of Civil Procedure requires more than "reciting the claim elements and merely concluding that the accused product has those elements." *Bot M8 LLC v. Sony Corp. of Am.,* 4 F.4th 1342, 1353 (Fed. Cir. 2021). "To allege direct infringement, the complaint must allege facts sufficient to create a plausible inference that ***each element*** of the claim is infringed by the accused products." *HourExchange, LLC v. Student Loan Benefits, Inc.*, No. 1:22-CV-00356-RP, 2023 WL 139150, at *4 (W.D. Tex. Jan. 9, 2023) (quoting *CPC Pat. Techs. Pty Ltd. v. Apple Inc.*, No. 6:21-CV-00165-ADA, 2022 WL 118955, at *1 (W.D. Tex. Jan. 12, 2022)) (emphasis added); *see also Encoditech, LLC v. Citizen Watch Co. of Am., Inc.*, No. SA-18-CV-1335-XR, 2019 WL 2601347, at *4 (W.D. Tex. June 25, 2019). Following the Federal Circuit's decision in *Bot M8*, courts in this District have held that more detailed pleading is necessary where, like here, the

---

[4] When reminded of the April 10 deficiency letter in the May 2 correspondence indicating Google's plan to file a motion to dismiss unless the case was dismissed, Plaintiff's counsel responded: "My apologies. I will respond shortly." Google did not, however, receive any further response.

accused technology involves software, rather than simple physical devices.[5] *See, e.g., HourExchange,* 2023 WL 139150, at *4; *LS Cloud Storage Techs., LLC v. Amazon.com, Inc.*, No. 1:22-CV-1167-RP, 2023 WL 2290291, at *4 (W.D. Tex. Feb. 27, 2023).

A "patent infringement Plaintiff [must] identify an accused product by name in most cases such that the Defendant is on notice of what specific conduct is alleged to constitute infringement." *Estech Sys., Inc. v. Regions Fin. Corp.*, No. 6:20-CV-00322-ADA, 2020 WL 6324321, at *2 (W.D. Tex. Oct. 28, 2020). The Federal Circuit has affirmed dismissal of complaints that fail to adequately identify the accused instrumentalities. For example, in *Artrip v. Ball Corp.*, 735 F. App'x 708, 714 (Fed. Cir. 2018), the Federal Circuit affirmed dismissal of a complaint that alleged "one or more of the machines at least at the Bristol Plant" infringed, but "did not otherwise identify the accused machines." *See also Addiction & Detoxification Inst. L.L.C. v. Carpenter*, 620 F. App'x 934, 937 (Fed. Cir. 2015) (holding that there "must be some allegation of specific services or products of the defendants which are being accused" to survive dismissal).

### 2. The Complaint fails to provide notice of the Google products or services accused of infringing the asserted patents.

Ask Sydney's Complaint and claim charts fail to provide Google fair notice of what it must defend against. Ask Sydney does not adequately identify the accused instrumentalities. It at times refers ambiguously to unidentified "Google services," or to generalized conduct by "Google" untethered to any product or service. And Ask Sydney intermittently cites to various products and services without mapping the elements for either asserted claim to a single Google product or service. Rather, with respect to the '786 patent, Ask Sydney variously cites different

---

[5] Thus, the standard applied by courts after *Bot M8* is more applicable than that in the prior decision of *Disc Disease Sols. Inc. v. VGH Sols., Inc.*, where the Federal Circuit found the pleading sufficient where a complaint "specifically identified the three accused products—by name and by attaching photos of the product packaging as exhibits—and alleged that the accused products meet 'each and every element of at least one claim.'" 888 F.3d 1256, 1260 (Fed. Cir. 2018). The software at issue here is not "a simple technology" like that of the spinal brace in *Disc Disease. Id.*

Google Ads products, Google Search, YouTube, "Google's general cookie management," "any websites that use Google Ads" (regardless of whether or not they are controlled by Google), along with other generalized references to "Google," without even attempting to allege, even on "information and belief," that any one product practices each claim element. *See, e.g.,* Compl., Ex. C, Dkt. No. 1-1, at 59, 68.

With respect to the '705 patent, Ask Sydney includes vague references to "Google's app's [sic] such as YouTube" and "Google's content ranking algorithm" without naming what these "Google app's" are or what product "Google's content ranking algorithm" is associated with. *Id.*, Ex. D, at 72, 79, 97. In addition, Ask Sydney's charts mix and match at least YouTube and Google Search, again without alleging that any one product practices each claim element. For example, for the limitation that requires "transitioning the one of the digital images with the subsequent digital image," Ask Sydney alleges "that Google's search engine and YouTube app will display digital images and transition to subsequent digital images on a user's video display device." *Id.* at 95. Ask Sydney then alleges "[t]he following exemplifies the existence of this limitation in Accused Systems" but only includes images from what appears to be Google image search. *Id.* at 96. Next, for the limitation requiring "receiving via the user input device…," Ask Sydney references YouTube and "Google's content ranking algorithm," but only shows a purported screenshot to YouTube. *Id.* at 97-98.

Thus, Ask Sydney's scattershot allegations as to various Google products and generalized references to "Google services" fails to identify any infringing conduct. *See AK Meeting IP LLC v. Zoho Corp.*, No. 1:22-CV-1165-LY, 2023 WL 1787303, at *4 (W.D. Tex. Feb. 6, 2023), report and recommendation adopted sub nom., No. 1:22-CV-01165-LY, 2023 WL 3035436 (W.D. Tex. Mar. 1, 2023) (direct infringement claim failed where the plaintiff improperly "mix[ed] and match[ed] the features of different accused products as the bases of its infringement claims.").[6] In the absence of  allegations that any single accused product meets

---

[6] Notably, Plaintiff's counsel in this case—William P. Ramey, III of Ramey LLP—also represents the plaintiff in the *AK Meeting* case.

each and every limitation of a patent claim, the complaint is subject to dismissal.

      **3.**     **The Complaint also fails because it does not adequately allege Google practices each element of the asserted claims.**

Even if it were permissible for Ask Sydney to establish infringement by pointing to multiple different products (which it is not), the Complaint *still* does not adequately allege infringement, as it does not allege that Google practices all elements, including presenting images to users one at a time or determining "weightings" of tags.

      **a.**     **The Complaint admits Google does not present images to users "one at a time," as required by the asserted claims in both the '786 and '705 patents.**

"A patentee may subject its claims to early dismissal by pleading facts that are inconsistent with the requirements of its claims." *Bot M8*, 4 F.4th at 1346. Where allegations in the complaint plainly contradict the accused product's practice of the claim limitations, a complaint is also subject to early dismissal. *See Metricolor LLC v. L'Oreal S.A.*, 791 F. App'x 183, 189 (Fed. Cir. 2019). That is precisely what Ask Sydney has done.

The asserted claims in both patents require presenting images one at a time. Claim 1 of the '786 Patent requires "causing a presentation of *only the one electronic image*" ('786 Patent 27:1-3), and "generating a sequence of electronic images presented to the user *one at a time* on the display of the electronic device" (*Id.* 27:60-67) (all emphases added). Claim 1 of the '705 Patent requires "transitioning *the one of the digital images* with the subsequent digital image." '705 Patent 27:41-44 (emphasis added). During prosecution of the '786 Patent, in response to the Patent Examiner's rejection based on § 101 grounds, Ask Sydney argued that "transmitting one electronic image … saves network resources, such as bandwidth, compared to sending a plurality of electronic images to the electronic device in response to each user input" and thus improved computer functionality. Dinh Decl., Ex. 2, '786 Patent Prosecution History, Applicant's Remarks, at 13 (Jan. 25, 2016).[7] Ask Sydney must therefore plead that Google practices this

---

[7] The Examiner did not address this argument in the Notice of Allowance. *See generally* Dinh

element with greater detail because the limitation was material to Ask Sydney's arguments during prosecution. See *Bot M8*, 4 F.4th at 1353 (the level of detail plaintiff must plead depends in part on "the materiality of any given element to practicing the asserted claim(s)"); *HourExchange,* 2023 WL 139150, at *4 (similar).

But Ask Sydney itself admits that Google presents *multiple images at a time.* Indeed, the '786 claim chart states that "Google shows a horizontally scrolling ***sequence of images*** as described." Compl., Ex. C, Dkt. 1-1, at 68 (emphasis added). Ask Sydney likewise admits that *user action* is necessary for images to be presented one at a time, stating "*[t]he user* may zoom in on the picture, showing only one image at a time."[8] *Id.* (emphasis added). This is confirmed by the screenshots in the claim charts, which depict Google displaying multiple images at once:



*Id.* at 60.

---

Decl., Ex. 3, '786 Patent Prosecution History, Notice of Allowance (March 11, 2016)

[8] To the extent that the Complaint can be read to assert that the end users of the accused instrumentalities (whatever they are) directly infringe by zooming into images one at a time, the Complaint would still fail because there are no allegations that Google controls the end users or conditions provision of the accused instrumentalities on performing any of the steps of the claimed methods, nor even how Google could exercise any control over such users. *See Lyda v. CBS Corp.*, 838 F.3d 1331, 1340 (Fed. Cir. 2016) (affirming 12(b)(6) dismissal where "the Amended Complaint does not allege any relationship between the Defendants and the unnamed third parties … in a way that the actions of these unnamed third parties should be attributed to Defendants.").



Compl., Ex. D, Dkt. No. 1-1, at 73.

Thus, Ask Sydney has pled itself out of court by alleging facts that render its "infringement claim not even possible, much less plausible." *Bot M8*, 4 F.4th at 1354; *Metricolor*, 791 F. App'x at 188 (finding allegations insufficient when the alleged functionality "plainly contradict[ed]" the actual claim limitation).

> **b.      Ask Sydney does not plausibly allege that the accused instrumentalities practice the "determining weightings" and "determining" an "additional tag" based on a different tag "having a highest weighting" limitations of the '786 Patent.**

"To allege direct infringement, the complaint must allege facts sufficient to create a plausible inference that ***each element*** of the claim is infringed by the accused products." *HourExchange*, 2023 WL 139150, at *4 (emphasis added).

Claim 1 of the '786 Patent requires "determining weightings" of tags and "determining" an "additional tag" based on a different tag "having a highest weighting." '786 Patent 27:39-51. But Ask Sydney pleads no facts to support Google's practice of these limitations. Rather, Ask Sydney relies solely on "information and belief"—without pleading any "information" that allegedly renders such a "belief" plausible—to conclude that "Google and Google Ads use a weighting system." Compl., Ex. C, Dkt. No. 1-1, at 67-68. Ask Sydney also ignores the claim language requiring "determining" of "additional tags" based on this alleged "highest weighting"

tag. Ask Sydney does not allege any facts regarding any Google products determination of "an additional tag" based on a different tag "having a highest weighting." As discussed below, Ask Sydney was only able to overcome rejection based on § 101 by adding these limitations to claim 1 of the '786 Patent. Because the limitations were material to allowance, Ask Sydney is required to plead detailed *facts* that render it plausible that Google practices these limitations. But Ask Sydney has pled none, and this failure is fatal to its claim. *See generally HourExchange*, 2023 WL 139150. Accordingly, the Complaint should be dismissed.

> ### c.    Ask Sydney distinguished Google Search during prosecution of the '705 Patent, thereby admitting Google Search does not practice the claims.

The speciousness of Ask Sydney's infringement claim is also evident from the fact that it now accuses functionality it expressly distinguished during prosecution. During prosecution of the '705 Patent, to overcome rejection based on § 101, Ask Sydney argued that:

> [T]he iterative process steps of the claims reflect an improvement in the functioning of a computer with respect to the technical field of recommendations. Whereas conventional recommendation systems may provide results in response to queries, the queries are static rather than iterative. These static queries are insufficient for many recommendation purposes.

Dinh Decl., Ex. 5, '705 Patent Prosecution History, Applicant's Remarks, at 8 (Apr. 9, 2019). Ask Sydney then expressly disclaimed Google's "static" search results, stating:

> For example, Google can provide search results in fractions of a second, but the search results are static. The user must review the results and update the search based on the favorable and/or unfavorable indications the user has to the results. If the user cannot put into words the favorable and/or unfavorable indications, the user is [sic] cannot accurately update the search and is left with an unsatisfactory recommendation experience.

*Id.* Now, despite expressly distinguishing Google Search during prosecution, Ask Sydney pleads that Google practices the claimed method through "Google Search." *E.g.* Compl. Ex. D, Dkt. No. 1-1, at 72-73. Plaintiff cannot sustain its pleading burden by accusing the exact same

functionality that it distinguished during prosecution.[9]

### B.      The asserted claims are invalid under 35 U.S.C. § 101.

The complaint should also be dismissed because the asserted claims are invalid under 35 U.S.C. § 101. The claims fail both prongs of the *Alice* two-step test. The claims are directed to the abstract idea of generating and presenting an image to a user in order to determine the user's interest. And, neither of the asserted claims contains an "inventive concept sufficient to ensure that the patent in practice amounts to *significantly more* than a patent upon the ineligible concept itself." *See Alice Corp. v. CLS Bank Int'l,* 573 U.S. 208, 216 (2014) (emphasis added) (cleaned up).

#### 1.      Abstract ideas cannot be patented.

Under § 101 of the Patent Act "laws of nature, natural phenomena, and abstract ideas" are patent-ineligible subject matter. 35 U.S.C. § 101; *Alice,* 573 U.S. at 216. Determining whether patent claims are invalid under § 101 requires a two-step inquiry. *Alice*, 573 U.S. at 216. At step one, a court determines "whether the claims at issue are directed to" an abstract idea. *Id.* at 217. If so, then at step two, the court evaluates whether there exists "an 'inventive concept'— i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." (cleaned up) *Id.*

Patentability under 35 U.S.C. § 101 is a threshold legal issue appropriate for resolution at the pleadings stage. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010); *Aatrix Software, Inc. v. Green Shades Software, Inc.,* 882 F.3d 1121, 1125 (Fed. Cir. 2018). Indeed, courts routinely address § 101 challenges on the pleadings. *See, e.g., Sanderling Mgmt. Ltd. v. Snap Inc.*, No. 2021-2173,

---

[9] Ask Sydney's boilerplate Complaint alleges Google "directly infringe[s], literally and/or under the doctrine of equivalents." Compl. ¶¶ 18, 25. To the extent Ask Sydney claims to rely on the doctrine of equivalents, it is also barred from claiming infringement by Google Search due to argument-based prosecution history estoppel. *See Amgen Inc. v. Coherus BioSciences Inc.*, 931 F.3d 1154 (Fed. Cir. 2019) (affirming dismissal because prosecution history estoppel barred patentees from succeeding on their infringement claim under doctrine of equivalents). Argument-based prosecution history estoppel bars a patentee from claiming infringement where the patentee evinced a clear and unmistakable surrender of certain subject matter during prosecution of the patent. *Id.*

2023 WL 2904758, at *3 (Fed. Cir. Apr. 12, 2023); *Simio, LLC v. FlexSim Software Prods., Inc.,* 983 F.3d 1353, 1365 (Fed. Cir. 2020); *Vervain,* 2022 WL 23469, *9. Any claim construction disputes need only be resolved "to whatever extent is needed to conduct the § 101 analysis." *Aatrix,* 882 F.3d at 1125. Thus, for example, where a patentee offers no proposed construction of any term that would preclude dismissal, patent ineligibility can be decided on a motion to dismiss. *Cleveland Clinic Found. v. True Health Diagnostics LLC,* 859 F.3d 1352, 1360 (Fed. Cir. 2017).

> 2. *Alice* **step one: the asserted claims are directed to an abstract idea.**

At step one, courts look at the focus of the claims to determine their "character as a whole." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016). Typically, the step one analysis for computer-related inventions requires the Court to "ask whether the claims are directed to an improvement to computer functionality versus being directed to an abstract idea." *Sanderling*, 2023 WL 2904758, at *3 (quoting *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016)). It has long been recognized that "methods of organizing human activity" are abstract ideas. *In re TLI Commc'ns LLC Pat. Litig.,* 823 F.3d 607, 613 (Fed. Cir. 2016). To be directed to an improvement in the functioning of a computer, a claim must do "more than describe a desired function or outcome." *Affinity Labs of Tex., LLC v. Amazon.com Inc.*, 838 F.3d 1266, 1269 (Fed. Cir. 2016). Claims that are "directed to a patent-eligible improvement to computer functionality… must be directed to an improvement to the functionality of the computer or network platform itself." *Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1365 (Fed. Cir. 2020). This inquiry "often turns on whether the claims focus on the specific asserted improvement in computer capabilities or, instead, on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool." *Id.* (cleaned up)

The asserted claims are directed to the abstract idea of generating and presenting an image to a user in order to determine the user's interest. This is nothing more than using a computer as a tool to do what humans have long done—make recommendations by analyzing a

user's preferences. Indeed, the shared specification acknowledges that "[o]nly the human can, using his or her subjective senses, ascertain from an image how a user feels about what is presented in the image." '786 Patent 5:29-31. It also admits that "there exist a multitude of applications, both Internet-based applications and smartphone/tablet-based applications, that make recommendations for users based on analyzing a user's history." *Id.* at 1:22-25. The problem, the specification claims, is that these current systems cannot account for the "granularity of a user's current preference relative to, for example, a user's historical preferences." *Id.* at 5:8-13. Thus, "a new programmed machine is needed to help users find relevant information quickly to satisfy needs that are fleeting and must be satisfied quickly." *Id.* at 5:37-41.

But the problem of enabling users to "find relevant information quickly" has existed for millenia and is not a problem limited to computers. *Id.* And solutions to this problem have also existed for ages, including paper-based solutions coming from libraries, accounting systems, and the like. In other words, the claims "do not focus on an improvement in computers as tools, but on certain independently abstract ideas that use computers as tools." *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1168 (Fed. Cir. 2018) (cleaned up).

Federal Circuit precedent confirms that the claims are directed to an abstract idea and patent-ineligible under § 101. The Federal Circuit in numerous cases has found that claims aimed at using user information to deliver content specific to the user are directed to abstract ideas. This includes claims directed to "(1) gathering information about television users' viewing habits; (2) matching the information with other content (i.e., targeted advertisements) based on relevancy to the television viewer; and (3) sending that content to a second device," *Free Stream Media Corp. v. Alphonso Inc.*, 996 F.3d 1355, 1361-62 (Fed. Cir. 2021); having "users consider historical usage information while inputting data," *BSG Tech LLC v. BuySeasons, Inc.*, 899 F.3d 1281, 1288 (Fed. Cir. 2018); "delivering user-selected media content to portable devices," *Affinity Labs*, 838 F.3d at 1269; and "gathering and analyzing information of a specified content, then displaying the results," *Elec. Power Grp.*, 830 F.3d at 1354.

*Bridge & Post, Inc. v. Verizon Commc'ns, Inc.*, 778 F. App'x 882 (Fed. Cir. 2019) is also instructive. In that case, the Federal Circuit found that patents aimed at tracking a user's internet activity and using that information to deliver targeted content, such as ads, were invalid under § 101. One of the patents at issue in *Bridge & Post*, U.S. Patent No. 7,657,594 (the "'594 Patent"), recited "a method for providing directed media to a user on a network." *Id.* at 886. Claim 1 of the '594 Patent "recited steps of 'retrieving a persistent device identifier,' 'determining' and 'retrieving' information associated with the identifier, 'analyzing' the information, and 'placing directed media' based on that analysis." *Id.* at 887. The Federal Circuit found these limitations were "nothing more than a computer-implementation of targeted marketing over the Internet. The remaining limitations included 'receiving a request ...,' 'generating a user profile ...,' and 'storing the user profile ...,'" are generic computer functions performed in the service of implementing targeted marketing, and do not change the focus of the claim." *Id.* In finding the claim was directed at an abstract idea, the court emphasized that they "have previously held, claims related to 'customizing information based on (1) information known about the user and (2) [specific] data' are directed to abstract ideas." *Id.* at 888 (citing *Internet Pats. Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015)).

The asserted claims are both directed to the abstract idea of generating and presenting an image to a user in order to determine the user's interest. The claims recite functional language, "without providing any limiting detail that confines the claim to a particular solution to an identified problem": retrieving information, determining tags, receiving an input, transmitting an image, processing tags, and generating a sequence of images. *Affinity Labs*, 838 F.3d at 1269. Many of the steps mirror those described as generic in *Bridge & Post*. But the claims do not disclose how any of these *results* are to be achieved. *See EscapeX IP LLC v. Block, Inc.*, No. 1:22-CV-03575 (JMF), Dkt. No. 30 (S.D.N.Y. Jan. 24, 2023) (finding claims were directed to abstract idea where the claims described generation of "album parameters" but did not "explain how those album parameters are generated").

Claim 1 of the '786 Patent does not disclose any specific algorithm, special programming, or any new hardware to be used. Further, the claim language does not explain, for example, how the system retrieves information from the user or how tags specific to the user are to be determined. The specification decries any meaningful limitation in scope to the "determining weightings" element. It states that "the weighting can be based on any type of metric or schema" and any number of factors and/or metrics. '786 Patent 15:52-16:1.

Indeed, during prosecution of the '786 Patent, the Examiner initially rejected the claims based on § 101 grounds. The Examiner found that claim 1 of the '786 patent was directed to the abstract idea of "analyzing information associated with a sequence of images to determine a user's current interest." Dinh Decl., Ex. 1, '786 Patent Prosecution History, Non-Final Rejection, at 6 (Dec. 1, 2015). Ask Sydney was only able to overcome § 101 rejection by amending claim 1 and adding the "determining weightings of the tags within the plurality of tags specific to the user…" and "determining the at least one additional tag based on the at least one addition tag having a highest weighting among the plurality of tags specific to the user" limitations. *See* Dinh Decl., Ex. 2, '786 Patent Prosecution History, Applicant's Remarks, at 3 (Jan. 25, 2016). The Examiner concluded that these limitations supplied an inventive concept that "move the claim as a whole beyond the abstract idea by solving a technical problem rooted in technology." Dinh Decl., Ex. 3, '786 Patent Prosecution History, Notice of Allowance, at 10 (Mar. 11, 2016). While the Examiner ultimately allowed the claim based on a step-two analysis, he did not change his position that the claims were directed at an abstract idea at step one of the *Alice* test. *Id.*

Claim 1 of the '705 Patent is also directed to the abstract idea of generating and presenting an image to a user in order to determine the user's interest. Claim 1 of the '705 Patent again recites many of the same generic steps as claim 1 of the '786 Patent: determining images to present, receiving user input, and analyzing some tags. But these limitations merely describe methods of organizing human activity or recite generic steps for implementing the abstract idea. For example, claim 1 recites "adjusting weights of at least some of the tags based on an association relative to tags within the same category of tags to which the subsequent digital

image belongs." '705 Patent 27:38-40. A human could perform this concept by merely taking in new information and using it to inform next steps (e.g. an interior designer showing a client room styles, noticing the client consistently likes contemporary designs, then recommending contemporary decor).

And, the claims are agnostic as to *how* these claimed results are to be achieved. Neither the claim language nor the specification articulate how the weights are to be adjusted. The claim likewise does not disclose any specific algorithm, special programming, or any new hardware.

Like with the '786 Patent, the Examiner found that claim 1 of the '705 Patent was "drawn to the abstract idea of generating and presenting an image to a user in order to determine the user's interest." Dinh Decl., Ex. 4, '705 Patent Prosecution History, Non-Final Rejection, at 9 (Jan. 11, 2019). Again, the Examiner allowed the claim even though he found it was directed at an abstract idea because he concluded the "[a]djusting weights of tags and including the weighting of tags on an image to be included in the next set of images[10] as claimed moves the claim as a whole beyond the abstract idea by solving a technical problem rooted in technology." Dinh Decl., Ex. 6, '705 Patent Prosecution History, Notice of Allowance, at 7 (Jul. 12, 2019). As explained below, that conclusion is incorrect.

Because the asserted claims are directed to an abstract idea, the analysis should proceed to step two.

### 3.    *Alice* step two: representative claim 1 lacks an inventive concept.

At step two, the question is whether the elements of representative claim 1, either individually or in combination, contain an inventive concept sufficient to "'transform' the claimed abstract idea into a patent-eligible application" of the idea. *Alice*, 573 U.S. at 217, 221. An element or combination of elements must add "significantly more" beyond the abstract idea itself. *Id*. at 222. A patentee cannot simply invoke "already-available computers;" "[r]ather, the components must involve more than performance of well-understood, routine, conventional

---

[10] The "including the weighting of tags on an image to be included in the next set of images" limitation does not appear in asserted claim 1 of the '705 Patent.

activities previously known to the industry." *In re TLI Commc'ns LLC Pat. Litig*., 823 F.3d at

613 (Fed. Cir. 2016) (cleaned up). To save a patent at step two, an inventive concept must be

evident in the claims. *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329,

1338 (Fed. Cir. 2017). "To salvage an otherwise patent-ineligible process, a computer must be

integral to the claimed invention, facilitating the process in a way that a person making

calculations or computations could not." *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada

(U.S.)*, 687 F.3d 1266, 1278 (Fed. Cir. 2012). And, the claims must describe with "specificity …

how those components provide a concrete solution to the problem addressed by the patent."

*Affinity Labs*, 838 F.3d at 1271.

In *Electric Power Group*, the Federal Circuit found no inventive concept existed in a

patent describing methods for performing real-time performance monitoring of an electric power

grid by collecting data from multiple data sources, analyzing the data, and displaying the results.

830 F.3d 1350. The Federal Circuit emphasized that where claims "do not require any

nonconventional computer, network, or display components, or even a 'non-conventional and

non-generic arrangement of known, conventional pieces,' but merely call for performance of the

claimed information collection, analysis, and display functions 'on a set of generic computer

components' and display devices." *Id.* at 1355. These conventional computer components, the

Court held, were not even "arguably inventive." *Id.* Further, claims aimed at "analyzing

information by steps people go through in their minds, or by mathematical algorithms, without

more," are considered "essentially mental processes within the abstract-idea category." *Id.* at

1354.

Like the claims in *Electric Power Group,* the ones at issue here merely use "off-the-shelf,

conventional computer, network, and display technology" that is "not even arguably inventive"

and "'insufficient to pass the test of an inventive concept in the application' of an abstract idea."

*Id.* at 1355.

The elements of claim 1 of the '786 Patent do not specify any technological

implementation for the methods and refer only to generic computer components such as an

"electronic device," "application," and "computer devices." *E.g.* '786 Patent 26:48-53. The "determining weightings" and "determining the at least one additional tag based on the at least one additional tag having a highest weighting among the plurality of tags specific to the user" limitations that the Examiner concluded "move the claim as a whole beyond the abstract idea by solving a technical problem rooted in technology" do not actually require any technological implementation—indeed, they do not call for any type of computer at all. Dinh Decl., Ex. 3, '786 Patent Prosecution History, Notice of Allowance, at 10 (Mar. 11, 2016). While the Examiner found these limitations "solv[e] a technical problem rooted in technology," he did not explain what this "technical problem rooted in technology" was or how the limitations solved this problem. *Id.* At a high level, "determining weightings" merely refers to ranking certain tags higher than others (i.e, if a person has repeatedly reacted positively to modern furniture, ranking modern furniture or decor higher than other pieces using other room styles). The limitations do not make a computer "integral to the claimed invention, facilitating the process in a way that a person making calculations or computations could not." *Bancorp*, 687 F.3d at 1278.

Claim 1 of the '705 Patent fares no better. The only computer components recited are a "video display device" and a "user input device." '705 Patent 27:23-35. Although the Examiner concluded that the "[a]djusting weights of tags and including the weighting of tags on an image to be included in the next set of images[11] as claimed moves the claim as a whole beyond the abstract idea by solving a technical problem rooted in technology," he again did not explain what problem the limitations solved nor how. Dinh Decl., Ex. 6, '705 Patent Prosecution History, Notice of Allowance, at 7 (Jul. 12, 2019). And the limitations do not make a computer "integral to the claimed invention, facilitating the process in a way that a person making calculations or computations could not." *Bancorp*, 687 F.3d at 1278. Rather, the claims merely recite calculations that a person could make; the "adjusting weights" limitation merely describes adjusting rankings of descriptive tags.  For example, if the client responds negatively to dark

---

[11] The "including the weighting of tags on an image to be included in the next set of images" limitation does not appear in asserted claim 1 of the '705 Patent.

paint colors, the interior designer could take note that the client tends to disfavor contemporary room styles and rank other contemporary designs lower. This is not inventive.

Although the specification cannot supply the requisite inventive concept—the inventive concept must be evident in the claims—it is worth noting the asserted patents' shared specification is likewise devoid of any specific technical requirements. *See Two-Way Media*, 874 F.3d at 1338. The specification in fact disclaims any sort of restriction on the technology to be used, stating that the methods and algorithms can include "*any ... [s]uitable electronic processing device*." '786 Patent 4:51-55 (emphasis added). With similar breadth, the specification notes that "the term computer as used herein can include a system of electronic devices coupled together *to form what is conventionally referred to as a computer*." '786 Patent 6:37-40 (emphasis added); *see also id.* 6:29-33 (the computer can be any device that has "central processing unit (CPU) or controller or microprocessor or microcontroller"), 6:33-37 (describing examples of already-available computers, such as "tablet computers, laptop computers, desktop computers, servers, smartphones," etc.); 7:35-36 ("The server is a type of computer, and *has a well understood meaning in the art.*") (emphasis added); 6:28-29 ("the communication network can be any type of electronic communication network.").

Using a computer to make recommendations faster is not inventive. The specification claims that "a new programmed machine is needed to help users find relevant information quickly to satisfy needs that are fleeting and must be satisfied quickly." '786 Patent 5:37-41. But "claiming the improved speed or efficiency inherent with applying the abstract idea on a computer [does not] provide a sufficient inventive concept." *Intellectual Ventures I LLC v. Cap. One Bank (USA)*, 792 F.3d 1363, 1367 (Fed. Cir. 2015).

Accordingly, the asserted patents fail both *Alice* steps, rendering them invalid.

**C.      Leave to amend should be denied.**

Google respectfully submits that Ask Sydney should not be granted leave to amend because amendment would be futile. *Ballard v. Devon Energy Prod. Co.*, 678 F.3d 360, 364 (5th Cir. 2012). First, Ask Sydney cannot plausibly allege that Google presents images one at a time,

as required by the asserted patents, and indeed has affirmatively alleged the opposite–that Google presents images *multiple at a time*. *See ALD Soc., LLC v. Google, LLC*, No. 6:22-CV-00972-FB, Dkt. 20, at 7–8, 11 (W.D. Tex. Mar. 17, 2023) (dismissing complaint with prejudice where Plaintiff affirmatively alleged facts that were inconsistent with patent limitations).[12] Second, Ask Sydney cannot plausibly allege that Google search, which it expressly distinguished during patent prosecution, infringes the '705 Patent. *See Grecia Est. Holdings LLC v. Meta Platforms, Inc.*, 605 F. Supp. 3d 905, 914-917 (W.D. Tex. 2022) (dismissing complaint with prejudice where plaintiff's allegations contradicted its statements to the Patent Office). Finally, Ask Sydney cannot amend around the lack of patentable subject matter of the asserted claims. *Network Architecture Innovations LLC v. CC Network Inc.*, No. 2:16-CV-00914-JRG, 2017 WL 1398276, at *7 (E.D. Tex. Apr. 18, 2017) (dismissing complaint with prejudice because patent was invalid under § 101).

## IV.    CONCLUSION

For the foregoing reasons, Google respectfully requests that the Court dismiss the Complaint with prejudice pursuant to Rule 12(b)(6) because the complaint fails to plead facts explaining how Google purportedly infringes any claims of the patents-in-suit and the asserted claims are invalid under 35 U.S.C. § 101.

//
//

---

[12] Notably, Plaintiff's counsel in this case—William P. Ramey, III of Ramey LLP—also represented the plaintiff in the *ALD Social* case.

Respectfully submitted,

                              **JACKSON WALKER LLP**

Dated: May 5, 2023

                    By:    */s/ Nathaniel St. Clair, II*
                           Erica Benites Giese
                           Texas State Bar No. 24036212
                           egiese@jw.com
                           112 E. Pecan Street, Suite 2400
                           San Antonio, TX 78205
                           (210) 978-7900
                           (210) 242-4646 (facsimile)

                           Nathaniel St. Clair, II
                           Texas Bar No. 24071564
                           nstclair@jw.com
                           2323 Ross Avenue, Suite 600
                           Dallas, TX 75201
                           (214) 953-6000
                           (214) 953-5822 (facsimile)

                           Asim M. Bhansali
                           Texas State Bar No. 90001290
                           abhansali@kblfirm.com
                           Kate E. Lazarus (*pro hac vice* pending)
                           klazarus@kblfirm.com
                           Elizabeth H. Dinh (*pro hac vice* pending)
                           edinh@kblfirm.com
                           KWUN BHANSALI LAZARUS LLP
                           555 Montgomery Street, Suite 750
                           San Francisco, CA 94111
                           Tel: (415) 630-2350

                           Attorneys for Defendant
                           GOOGLE, LLC